IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Singer Asset Finance Company, L.L.C., | : | |
| Plaintiff | : | Civil Action 2:13-cv-0638 |
| v. | : | Judge Smith |
| Kelly Cassidy-Elliott, *et al.*, | : | Magistrate Judge Abel |
| Defendants | : | |

## Report and Recommendation
## Regarding Structured Settlement Protection Act and Settlement Agreement

Counsel had reported this case settled, but plaintiff's counsel's August 5 status report advised me that the settlement had not been finalized and requested a status conference. During a conference held August 14, counsel for plaintiff Singer Asset Finance Company, L.L.C. ("Singer") and defendant Kelly Cassidy-Elliott ("Elliott") reported they had settled the law-suit during the March Settlement Week, but defendants Symetra Assigned Benefits Service Company and Symetra Life Insurance Company (collectively "Symetra") have raised questions about whether Ohio's Structured Settlement Protection Act ("SSPA"), Ohio Revised Code § 2323.58, *et seq*[1] (effective October 27, 2000) requires Ohio court approval of Elliott's transfer of $90,000 of the $100,000 March 23, 2018 periodic

_____

[1]Section 2323.58 contains the Act's definitions of terms. Section 2323.581 covers when notice of a transfer of structured settlement payment rights is required. If the Act applies, § 2323.582 requires a disclosure statement. Section 2323.583 requires express findings by a court of competent jurisdiction to approve a transfer of structured settlement payment rights. Section 2323.584 controls an application for approval in advance of a transfer of structured settlement payment rights by an Ohio court.

payment due her from Symetra.

Symetra's concern is that the UCC financing statement for the loan could be read as not transferring the 2018 periodic payment to Singer. The SSPA requires that a court of competent jurisdiction give prior approval to any transfer of structured settlement pay-ment Rights. Ohio Revised Code §  2323.583. Otherwise the transfer is not effective and the annuity issuer is not required to make payment to a transferee who has not obtained court approval. Ohio Revised Code §  2323.581. The definition of a transfer includes "pledge, hypothecation, or any other form of . . . encumbrance" Ohio Revised Code §  2323.58(Q). The Internal Revenue Code imposes a tax "upon any person who acquires . . . structured settlement payment rights in a structured settlement factoring transaction" IRC § 5891(a). This tax does not apply if the transaction transferring those payment rights is approved in advance in a "qualified order". IRC § 5891(b)(1). The Code defines a qualified order as a final order issued by a state court or responsible admin-istrative authority, which finds that the transfer does not violate federal or state law or court order and that the transfer is in the best interest of the payee. IRC § 5891(b)(2). This is the second time Cassidy-Elliott has filed suit. Symetra does not want to be subject to a third suit if Cassidy-Elliott were to be required to pay the 20% excise tax for annuity pay-ments that did not comply with the Act.

Underlying facts. On April 15, 1993, the Richland County, Ohio Probate Court approved the settlement of a wrongful death claim in the deaths of Elliott's parents where-by Elliott was to receive periodic payments from an annuity purchased from Defendant Symetra. The final payment under this settlement is the periodic payment to be paid on

March 23, 2018 (the "2018 Periodic Payment").

On April 12, 2000, Elliott and Merck Bank Corporation[2] entered the loan agreement that is the subject of this lawsuit. Merck loaned Elliott $7,000. She assigned to Merck as a lump sum payment for the loan the $63,000 structured settlement payment due her from Symetra March 23, 2013. The collateral pledged by Elliott to Merck under the loan agreement included the 2018 Periodic Payment.[3] On May 8, 2000, Singer, which had acquired the loan agreement from Merck, filed a UCC-1 Financing Statement to secure its rights in the loan collateral. Elliott signed the UCC form indicating that the collateral was described in Exhibit A, which provided that the collateral included all of her right to receive periodic payments due under the structured settlement annuity. It specifically set out each of the payments due under the annuity contract, including the $100,000 payment due March 23, 2018.

Decision. It is undisputed by the parties that the April 2000 loan and the May 2000 UCC filing pre-date the SSPA and, as such, are not subject to it. The question is whether the pledge of the 2018 Periodic annuity payment as collateral under for the loan was a transfer under Ohio's SSPA. If so, the Ohio SSPA would not apply since the lien pre-dates the SSPA. If not, the 2014 settlement agreement assignment of payment rights in the 2018 periodic structured settlement annuity payment to Singer would be a transfer that is governed by the SSPA.

_____

[2]Singer purchased the loan from Merck. May 3, 2000 Assignment Agreement.

[3]See, Terms Rider, "Collateral".

Symetra notes that lien rights are not the same as payment rights. The May 2000 UCC-1 Financing Statement placed a lien upon the 2018 periodic payment, but in the absence of a default it did not give Singer the right to receive the 2018 periodic payment.

The 2014 settlement between Elliott and Singer was reached by arms-length bargaining. Both parties were represented by counsel and fully informed of their litigation options. While the April 2000 loan agreement pledging the 2018 periodic payment as collateral and the May 2000 UCC filing may not have transferred an immediate right to the payment, its legal purpose and effect was to give Singer the right to the payment in the event Elliott defaulted on the loan. Elliott knew then that if she later defaulted on the loan, Singer had the right to the 2018 periodic payment. Her signature on the UCC filing acknowledges that fact. Since the parties do not dispute that she is in default on the loan, here assigning $90,000 of the $100,000 2018 periodic payment did not effect a transfer of a structured settlement payment requiring Ohio court approval under the SSPA because that right was transferred to Singer in May 2000 before the October 2000 effective date of Ohio's SSPA.

Singer and Cassidy-Elliott maintain that Symetra agreed to the settlement during the mediation and has no right to stand in the way of their resolution of this lawsuit. Symetra agrees that Singer and Cassidy-Elliott have the right to resolve their dispute and is willing to let them submit a proposed judgment order to the court asking the court to find that Ohio's Structured Settlement Protection Act does not apply to the assignment of the 2018 annuity payment.

For the reasons set out above, the Magistrate Judge **RECOMMENDS** that the Court

approve the settlement, finding that the UCC filing pledging the March 2018 structured

settlement periodic annuity payment to the lender transferred her right to that payment

before the Ohio Structured Settlement Protection Act's effective date. Consequently, the

proposed settlement does not effect a transfer of a structured settlement payment requir-

ing Ohio court approval under the SSPA.

If any party objects to this Report and Recommendation, that party may, within

fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court,

specifically designating this Report and Recommendation, and the part thereof in quest-

ion, as well as the basis for objection thereto.  28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R.

Civ. P.

The parties are specifically advised that failure to object to the Report and Recom-

mendation will result in a waiver of the right to *de novo* review by the District Judge and

waiver of the right to appeal the judgment of the District Court.  *Thomas v. Arn*, 474 U.S.

140, 150-152 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *United States v.*

*Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005); *Miller v. Currie,* 50 F.3d 373, 380 (6th Cir. 1995).

Even when timely objections are filed, appellate review of issues not raised in those object-

ions is waived.  *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991).


s/Mark R. Abel
United States Magistrate Judge

5